## LYCURGUS EDGERTON *et al.*
### *v.*
## ARCHIBALD YOUNG *et al.*

1. MORTGAGE — *merger*. A mortgagee may procure a conveyance of the mortgaged premises from the mortgagor without necessarily merging the lien of his mortgage in the greater estate.

2. Where a greater and less estate meet in the same person, a merger does not necessarily follow. That will depend upon the intent and the interest of the parties; and if a court perceives it is necessary to the ends of justice, that the two estates should be kept alive, it will so treat them.

3. A mortgagee assigned a note secured by mortgage, and subsequently procured a conveyance in fee of the mortgaged premises from the mortgagor to himself. The land was then levied upon and sold as the property of the mortgagee, to a third party. *Held,* that the only interest acquired by the purchaser at the sale was the equity of redemption.

4. If a purchaser finds upon record a mortgage, and a subsequent deed from the mortgagee to the mortgagor, it is probable that he would be protected under our registry laws against the claim of an assignee of the note secured by the mortgage, in the absence of notice of such assignment.

5. Although the assignment of a note, secured by mortgage, carries with it the equitable interest in the mortgage, it carries only an equitable interest; and, if the assignee desires to protect himself against all peril from a release of the legal title by the mortgagee to the mortgagor, and a subsequent conveyance by the mortgagor to a third person without notice, it would probably be held, that the assignee of the note should also take and record a deed from the mortgagee for the mortgaged premises. But, where the mortgagor conveys to the mortgagee the same rule does not apply.

6. CHANCERY — *cross-bill, when unnecessary.* A cross-bill is unnecessary when a defendant seeks no affirmative relief.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. M. E. HOLLISTER, Judge, presiding.

This was a suit in chancery commenced by Archibald Young, and Elbert H. Van Kleek, the defendants in error, in the Circuit Court of LaSalle county, for the purpose of foreclosing a trust deed, executed by Joshua Cushing and wife to Orville N. Adams, to secure a note for $1,600.

A decree of foreclosure was rendered in the court below, from which a writ of error was prosecuted to this court.

The facts in the case are sufficiently stated in the opinion of the court.

Messrs. WALKER & DEXTER, for the plaintiffs in error.

Messrs. CHARLES BLANCHARD and A. J. GROVER, for the defendants in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

On the 7th of October, 1855, Joshua Cushing executed to Orville N. Adams, his promissory note for $1,600, payable one

year from date, and, to secure its payment, at the same time executed a deed of trust on certain real estate, in which deed Adams was made the trustee with power to sell. On the 19th of May, 1856, Adams, being indebted to Young & Van Kleek, the complainants below, in the sum of $1,828, indorsed in blank the note of Cushing, and delivered it, together with the deed of trust, to the attorneys of Young & Van Kleek, to be held by them as security for the payment of the debt due from Adams to Young & Van Kleek. On the 27th of November, 1856, the note from Cushing to Adams being due and unpaid, the former executed to Adams, at his request, a conveyance in fee simple for the premises described in the deed of trust. It is not claimed that Young & Van Kleek, or their attorneys, had any agency in procuring the execution of this deed, or, at that time, any knowledge of its execution.

Before this time, namely, at the July Term, 1856, of the Circuit Court of the United States, for the Northern District of Illinois, Lycurgus Edgerton, one of the plaintiffs in error, recovered a judgment against Adams on which execution was duly issued, and on the 25th of August, 1857, the premises described in the deed of trust were sold by the marshal, and subsequently conveyed by him to J. M. Walker, as attorney of Edgerton, and afterward conveyed by Walker to Edgerton himself.

The attorneys of Young & Van Kleek, considering the lien of the deed of trust lost by these proceedings, on the 27th of October 1857, procured from Chauncey K. Adams, a brother of Orville N. Adams, a deed conveying to James Strain, one of said attorneys, a quarter section of land situate in Knox county, and, at the same time, Strain gave back to O. N. Adams a contract to reconvey in case Adams should pay Young & Van Kleek the amount due them in eighteen months from that date. The contract provided, that time should be of its essence, and if Adams failed to pay within the time stipulated, the contract to reconvey should be void. Adams did fail to pay, and on the 21st day of May, 1859, Strain, at the request of Young & Van Kleek, and with the consent of Adams, executed to them a deed for the Knox county land.

On the 7th of August, 1865, Young & Van Kleek filed their bill in chancery against Edgerton, Adams and Cushing, praying for a sale of the premises described in the deed of trust. Edgerton and Adams, in their answer, insist upon the sale and deed by the marshal as creating a paramount title, and also set up the proceedings in regard to the Knox county land. The Circuit Court pronounced a decree directing the payment to complainants of the amount due upon the note secured by the deed of trust, and, in default of payment, within thirty days, that the premises described in said deed of trust should be sold. Edgerton sued out a writ of error.

It is insisted by the complainant in error, that, inasmuch as no deed from Adams to Young & Van Kleek for the premises described in the deed of trust was ever made and recorded, nor any instrument placed on record showing the assignment by Adams, and since, when Edgerton bought, the record only showed, first, a deed of trust or mortgage by Cushing to Adams, and then an absolute deed from Cushing, Edgerton had the right to buy upon the faith that the entire estate in the premises had vested in Adams.

If a purchaser finds upon record a mortgage, and a subsequent deed from the mortgagee to the mortgagor, it is probable that he would be protected under our registry laws, against the claim of an assignee of the note secured by the mortgage, in the absence of notice of such assignment. Although the assignment of a note secured by mortgage, carries with it the equitable interest in the mortgage, it carries only an equitable interest, and if the assignee desires to protect himself against all peril from a release of the legal title by the mortgagee to the mortgagor, and a subsequent conveyance by the mortgagor to a third person without notice, it would probably be held, that the assignee of the note should also take, and record, a deed from the mortgagee for the mortgaged premises. But, admitting that such would be the rule where the mortgagee reconveys to the mortgagor, it by no means follows, that the same rule should be applied to cases where the mortgagor conveys to the mortgagee. The conveyance in the former case

can be understood only as manifesting an intention on the part of the mortgagee to release the lien of the mortgage. It can be made for no other purpose. A mortgagor, procuring a release of a lien created by himself against his own land, would be presumed to have procured the release with the express intent to extinguish the lien, and third persons would be authorized to act upon that presumption. But a mortgagee may procure a conveyance from the mortgagor without intending to merge the lien of his mortgage. It may be of great importance to him to be permitted, for the protection of his title, to keep his mortgage alive, and to assert it in a court of equity, if the necessity shall arise. Where a greater and less estate meet in the same person, a merger does not necessarily follow. That will depend upon the intent and the interest of the parties, and if a court perceives it is necessary to the ends of justice that the two estates should be kept alive, it will so treat them. Thus, if a mortgage is the eldest lien, and is for an amount exceeding the value of the premises, and the mortgagee, to avoid the expense of foreclosure, takes a conveyance from the mortgagor, a court of equity would not permit the mortgaged premises to be swept away from him by a junior judgment creditor without payment of the mortgage, under the pretense that its lien had been lost by merger. *Campbell* v. *Carter,* 14 Ill. 289; *Jarvis* v. *Frink,* 14 id. 398; *Brown* v. *Blydenburg,* 3 Seld. 141; *Gillett* v. *Campbell,* 1 Denio, 520.

When, then, in the case before us, Edgerton found on record the deed from Cushing, occupying the position of mortgagor, to Adams holding the place of mortgagee, he had no right to assume, that it was the intention of the parties thereby to extinguish the mortgage. This would not have necessarily followed, even if Adams had not previously assigned the note. In purchasing the land, Edgerton acted at his peril so far as related to the mortgage. He knew, that, by his purchase, he would acquire the estate conveyed by the absolute deed from Cushing to Adams, to wit, the equity of redemption; but he also knew, or was bound to know, that the mere circumstance that by the record, the estates of the mortgagor and mortgagee had united

in the same person, did not necessarily destroy the lien of the mortgage. He knew, or must be presumed to have known, that the mortgage would be held to have merged or not have merged as equity should require, and that if, when the mortgagor conveyed to the mortgagee, the latter had sold the note secured by the mortgage, then equity would require the mortgage to be kept alive, and he would acquire by his purchase only the estate of the mortgagor. There was nothing to justify him in acting on the presumption that the mortgage had been paid, and as the note had been assigned to Young & Van Kleek, it would be clearly inequitable to apply the doctrine of merger for the purpose of destroying the mortgage.

While, however, the Circuit Court committed no error in holding the mortgage still in force, it did err in directing its full amount to be paid without reference to the value of the Knox county land. The taking of this land did not release the mortgage as urged by complainant in error. It was merely taken as new security, and although taken because of an impression that the lien of the mortgage had been lost, yet the mortgage was not in fact released, nor was there any intention to voluntarily release it. But although the conveyance of the Knox county land did not of itself release the mortgage, yet it did operate as a payment, to the extent of its value, upon the debt due from Adams to Young & Van Kleek, and should have been so applied, and the residue of said debt should have been paid from the proceeds of the Cushing mortgage. As the record now stands, the court has pronounced a decree which, as. appears from the pleadings and proofs, may give the complainants below much more than they are entitled to receive. It is. suggested by counsel for appellees, that this inquiry could not be made without a cross-bill. If the complainants held, in the Knox county land, only the estate of a mortgagee, a cross-bill would be necessary in order to compel them first to exhaust that security. But the title of the complainants to that land has become absolute. The contract to reconvey was what is. commonly known as a forfeit contract, in which time was: expressly made of the essence; and, Adams having failed to

redeem within the stipulated time, and having consented to the conveyance by Strain to the complainants, their title may well be considered absolute. Indeed, by his answer in this suit, Adams sets up their title as having become absolute, and claims that the debt has thereby been satisfied. This is an abandonment of all claim of right to redeem. A cross-bill was therefore unnecessary, as the defendants ask no affirmative relief, but simply that a piece of property received by complainants on their debt should be applied as a payment *pro tanto.* This equity demands, and the court below will ascertain the value of this land at the time of the conveyance by Strain to complainants, including in the inquiry the condition of the title, and will first apply that amount on the indebtedness from Adams to complainants, and decree the payment of the residue out of the proceeds of the sale under the Cushing mortgage.

The counsel for appellants have insisted, that the deed from Strain to complainants operated like a strict forclosure, and that the effect of such a forclosure is to discharge the entire debt. The equitable rule, however, and the one sustained by the weight of authority, is, that such a foreclosure is only a discharge of the debt *pro tanto.*

The decree must be reversed and the cause remanded.

*Decree reversed.*