## SAUM v. HINE.

No. 26164.  Oct. 20, 1936.

Rehearing Denied Nov. 10, 1936.

W. R. Banker and J. A. Anderson, for plaintiff in error.

Cleon A. Summers, for defendant in error.

PER CURIAM.  There seems to be no dis-pute over the material facts in this case. Emma L. Saum was the owner of the first mortgage covering certain real property in Muskogee, Okla.  T. S. Hine was the owner of the second mortgage thereon.  The condi-tions of the mortgages had been breached by failure to pay.  During the latter part of 1931, Mrs. Saum consulted her real es-tate agent, John Philpin, with reference to her mortgage.  At that time apparently the property was not worth sufficient to pay the mortgage of Mrs. Saum; in addition there had accumulated several hundred dollars of delinquent taxes.  The holder of the record title had removed from the state and was then in Arkansas.  It also appears that the house on the premises was in need of repairs and renovations.  As a result of their discussion it was decided that in or-der to avoid the expense and delay inci-dent to a foreclosure action, Mr. Philpin should obtain for Mrs. Saum a quitclaim deed from the record owners and a release from Mr. Hine of his mortgage.  It was ex-pected that all of this could be done for about $200.  Philpin thereupon consulted with Hine, who agreed to execute a release of his mortgage for $150; said mortgage be-ing for the principal sum of $500 and upon which there had accumulated some unpaid interest.  Mrs. Saum gave Philpin the esti-mated $200 and Philpin went to Arkansas and procured a quitclaim deed from the rec-ord owners, paying $75 therefor.  He had expected to get this for a lesser amount, but learning that the record owners were expecting soon to leave Arkansas for Texas, he acted hurriedly and paid the amount, taking the deed in the name of Mrs. Saum, fearing that he would get out of touch with said record owners.  He brought the deed to Mrs. Saum and advised her to have the tax sales certificates, amounting to several hun-dred dollars for the delinquent taxes, pur-chased in her name and assigned to her, which was done.

He further advised her not to surrender such certificates for cancellation nor to place the quitclaim deed of record until the Hine release had been obtained.  The mat-ter of obtaining the release from Hine was not closed and Philpin shortly thereafter left Muskogee, being absent several months, but Mrs. Saum, being under the impression that a release had been obtained, surren-dered the tax certificates and placed the deed of record and took possession of the property, making improvements thereon at a cost of more than $1,000, paid the accru-ing taxes, rented the property, collected the rents and to that extent exercised owner-

ship over the same. Something like a year after Mrs. Saum had placed her deed of record and had thus improved the property and taken charge of the same, Hine demanded of her the payment of his note and mortgage, which she refused. This demand was her first actual knowledge that her agent Philpin had not obtained a release. Mrs. Saum had never released her mortgage of record nor canceled and surrendered up the notes secured by said mortgage. Hine instituted a foreclosure suit against his mortgagors and Mrs. Saum for the foreclosure of his mortgage and a judgment decreeing that his mortgage was prior to any rights of Mrs. Saum, claiming the full amount of his mortgage, to wit, $500 with interest at 8 per cent. from January 1, 1929, and an additional sum of 10 per cent. as attorneys' fees. Mrs. Saum answered by a general denial and cross-petition alleging that her mortgage was prior and asking for foreclosure thereof. Hine replied to said cross-petition by a general denial thereof, and further alleging that Mrs. Saum became the owner of said property by the quitclaim deed mentioned above, and that since the date thereof she had exercised ownership of the property, and that thereby her mortgage had merged with her title to said property. It is thus the contention of Hine that the mortgage of Mrs. Saum, having merged with the title she obtained by the quitclaim deed, thereby was destroyed, leaving the mortgage of Hine as the prior and only mortgage existing against the premises. The court also found that the mortgage of Mrs. Saum had been merged in her title acquired by said quitclaim deed and the exercising of ownership of the property thereafter, and thereby adjudged the mortgage of Hine to be prior and superior. Thus, taking possession of the property and improving the same, the renting thereof and the exercising of ownership thereof by Mrs. Saum appears to be the pivotal point upon which Hine claimed his priority and upon which the trial court decided the merger had taken place.

In Pomeroy's Equity, vol. 2, Fourth Edition, section 793, it is said:

"Where a mortgagee takes a conveyance of the land from the mortgagor or from a grantee of the mortgagor, if the transaction is fair, the presumption of an intention to keep the security alive is very strong. It is generally for the interests of the party in this position that the mortgage should not merge, but should be preserved to retain a priority over other incumbrances. As the mortgagee acquiring the land is not the debtor party bound to pay off either the mortgage or the other incumbrances on the land, there is nothing to prevent equity from carrying out his presumed intent, by decreeing against a merger."

This principle was also recognized by this court in Yoder v. Robinson, 45 Okla. 165, 145 P. 775.

The rule has been specifically stated in paragraph 2 of the syllabus of Kahn v. Gray, 171 Okla. 452, 43 P. (2d) 419, as follows:

"Where the assignee of a first mortgage afterwards acquires the title, a merger of the first mortgage with title will not necessarily be decreed, so as to make a second mortgage a prior lien to the detriment of the assignee of the first mortgage unless it clearly appears that a merger was intended."

In McCraney v. Morris, 170 S. C. 250, 170 S. E. 276, 95 A. L. R. 622, the court said:

"We think that the master and the circuit judge, both of whom evidently gave the case careful consideration, have overlooked the leading case in this state on the subject of merger, that of McCreary v. Coggeshall, 74 S. C. 42, 53 S. E. 978, 982, 7 L. R. A. (N. S.) 433, 7 Ann. Cas. 693. The opinion of the distinguished jurist, Mr. Justice Woods, in that case was said by this court in the later case of Owings v. Graham, 120 S. C. 408, 113 S. E. 279, to have been a 'masterful opinion.' After reviewing many, if not all, of the former decisions of this court on the law of merger, including the Richardson and Bleckeley Cases, cited in the report and decree in the lower court, Mr. Justice Woods, for this court, said: 'From this review we think it clear the later cases in this state establish the proposition, which as we have seen is in accord with the doctrine universally recognized in other jurisdictions, that in equity at least merger will not take place if opposed to the intention of the parties, affirmatively proved, or to be implied from the fact that merger would be opposed to the interest of the person in whom the different estates or interests became united.'

"That the principles declared by Mr. Justice Woods are generally recognized as being just and equitable is shown by the interesting article on 'Merger and Subrogation' in that excellent work, Jones on Mortgages (8th Ed.) vol. 2, beginning at page 508. Speaking on the subject of the effect of the acceptance by a mortgagee of a conveyance of the equity of redemption, the learned author, Mr. Jones, at page 521, says: 'The expressed intention will control; but in the absence of such express intention on the part of the mortgagee his intention will be presumed in accordance with his interests.' Further (page 523), it is said: 'When there is no evidence of the

intention of the owner in uniting the legal and equitable estates in himself, it is proper to presume that he intended that effect which is the most beneficial to himself. Therefore, if the estate be subject to other incumbrances, which he is under no obligation to pay, and it is better for him to preserve the lien of the prior mortgage rather than to extinguish it, and let the next subsequent incumbrance into its place of priority, these facts may be taken as sufficient ground for inferring that his intention was to preserve the mortgage rather than to extinguish it.' "

In that case Mrs. McCraney held the prior mortgage on the property, Henry Morris, the second mortgage, and there was a judgment lien in favor of Brown & Bush also inferior to her mortgage. She obtained a deed from the owner of the property, paying $12 therefor, and executed a release of her mortgage, which was entered of record. At the time of the accepting of the deed she did not know of the Henry Morris mortgage, though the same was of record. After so accepting the deed she paid delinquent taxes for two or three years, assessed against the property. There was conflicting evidence as to the value of the property, but the Supreme Court stated that in its view the property was not then nor was it at the time of the execution of the deed of sufficient value to more than pay the debt due to Mrs. McCraney, and that it certainly was not sufficient to pay the debt of both mortgages. Henry Morris, although knowing of the execution of the deed, made no demand for his money until the satisfaction of the McCraney mortgage had been placed of record. Mrs. McCraney, upon learning of the Morris mortgage, repudiated the deed she had obtained and sought foreclosure of her mortgage and to have the same decreed a prior lien. Henry Morris answered that the McCraney mortgage had been satisfied; that she had accepted in such satisfaction the deed mentioned above, and that thereby her mortgage had become merged with her title, and that his mortgage was the first lien on the premises. Speaking further with reference to the foregoing facts, the court said:

"Considering the facts of the cause and applying to them the principles announced in the McCreary Case, it is entirely manifest that the merger of the mortgage into the fee-simple title was absolutely 'opposed to the interest of the person (Mrs. McCraney) in whom the different estates or interests became united.' It can hardly be conceived that it was to the interest of Mrs. McCraney to absolutely surrender her mortgage debt in exchange for the mortgaged property of about the value of the debt, when thereafter she would be compelled to protect the property by the payment of the mortgaged debt of Henry Morris, amounting to something like $400, and the judgment of Brown & Bush for a little more than $1,000. The transaction, in effect, amounted to Mrs. McCraney surrendering her secured debt of nearly $500, without any consideration therefor, and purchasing the real estate of Mrs. Morris, valued at about $500, at the price of about $1,400. It would be almost absurd for this court, therefore, to reach the conclusion that a merger took place upon any legal assumption that it was to the interest of Mrs. McCraney for the same to occur."

And also:

"As suggested by both the circuit judge and master, Mrs. McCraney could have ascertained proper information by examining, or having examined, the public records. If the rights of some subsequent party were in any wise affected by this negligence on the part of Mrs. McCraney, we would, of course, hold her liable because of that negligence. But no subsequent innocent party is affected. With the setting aside of the transaction which has taken place, as to the conveyance of the property and the satisfaction of Mrs. McCraney's mortgage, neither Henry Morris nor Brown & Bush stand in any worse position than they were in prior to the occurrences. Nothing Mrs. McCraney has done put them to any disadvantage or caused them any loss."

Further in the opinion we find the following language:

"Mrs. McCraney was dealing fairly and frankly with all these parties, and gave Mrs. Morris a little cash for the execution of the deed in order to save the expense of a foreclosure suit. The evidence fails to show that at any time did she seek to take any undue advantage of any one. She was simply endeavoring to protect her rights."

And again:

"The junior mortgagee, Henry Morris, advanced no money and has not lost anything because of the mistake of Mrs. McCraney in satisfying her mortgage. The position of Brown & Bush is similar. Mrs. McCraney in good faith accepted the deed, thinking she would get a clear title to the property, free of outstanding liens. She has shown her good faith by paying past-due taxes for several years. Her acts have brought damage to no person except herself, and the court may restore her to her former position without injury or damage to any other person."

Much which is said in the above-quoted case applies forcefully here. Mrs. Saum had an interest to protect. The property

in all probability was not worth enough to pay the mortgage debt she held against it. In addition, there were large amounts of delinquent taxes which were accumulating and left unpaid over a period of years. The holders of the title to the property seem to have abandoned the same and had moved to Arkansas and were contemplating moving from there to Texas. The property seems to have been badly in need of repairs and renovations, and thereby her security depreciating. It cost her something over $1,000 to make such repairs. A foreclosure in the form of court costs and attorneys' fees would doubtless have cost her about $200. In addition thereto, there would have been the delay of foreclosure and further depreciation of the property, and the obtaining of possession thereof unless a receiver was appointed. The expenses of receivership would doubtless have added to the cost of such foreclosure. In her efforts to avoid a foreclosure and the expense incident thereto and to obtain immediate possession in order to preserve the property, she was willing to pay about what this would cost. She was endeavoring to protect her rights. At that time Hine had no material interest in the mortgaged premises for the reason that the mortgaged indebtedness due Mrs. Saum thereon and the delinquent taxes considerably exceeded the value of the property. It cannot be conceived that it was to the interest of Mrs. Saum to surrender her mortgage debt in exchange for the mortgaged property of not to exceed that value, when thereafter she would be compelled to protect the property by the payment of the mortgage debt to Hine. Without any consideration she would be placing the mortgage debt of Hine, amounting to $600 or $700, with accumulated interest, in a position superior to her mortgage and where she would have to discharge it to protect her mortgage. It would, therefore, be absurd to reach a conclusion that a merger took place upon a legal assumption that it was to the interest of Mrs. Saum. By keeping alive Mrs. Saum's mortgage and preserving its priority, Mr. Hine does not stand in any worse position than he was in prior to the acts of Mrs. Saum. Nothing she has done put him to any disadvantage or caused him any loss. He advanced no money and has not lost anything by any of the acts of Mrs. Saum. Her acts have brought damage to no person except herself and she may be permitted to maintain her position as prior mortgagee without injury or damage to him.

In Moffet v. Farwell, 222 Ill. 543, 78 N. E. 925, it appears that in 1891 John A. Crain and wife executed a mortgage to Charles B. Farwell on certain lots in Waverly, Ill., to secure a note of $5,000 and interest. Later a judgment was obtained against Crain, and thereafter Crain executed a deed to the mortgagee to save expenses of foreclosure, and later said mortgagee conveyed the premises by quitclaim deed to John V. Farwell, Jr. It was agreed at the time of the delivery of the deed to Farwell and at the time of the trial that the property was not worth more than $2,000. There was litigation involving the question as to whether or not there was a merger in the said mortgagee whereby the judgment creditor would become a prior lienholder. Speaking with reference thereto the court said:

"Whether a merger results from a greater and less estate uniting in the same person depends upon what will best subserve the purposes of justice and the intention of the parties. This court has held the question always to be one of intention, and that the interest of the parties and their intentions are controlling considerations. Richardson v. Hockenhull, 85 Ill. 124. 'The intention is the controlling consideration, where it has been made known or can be inferred from the acts and conduct of the party, and the court will look into all of the circumstances of the case to ascertain his real intention. If it appears that he intended to discharge the incumbrance and rely exclusively upon his newly acquired title, the incumbrance is regarded as extinguished and cannot afterwards be set up to strengthen and support that title. If no intention has been manifested, equity will consider the incumbrance as subsisting or extinguished, as may be most conducive to the interests of the party.' Campbell v. Carter, 14 Ill. 286. In Edgerton v. Young, 43 Ill. 464, it was held that whether a merger resulted from a greater and less estate meeting in the same person depends upon the intent and interest of the parties, and that a court of equity will keep alive both estates if it appears necessary to the ends of justice to do so. It was said in Shippen v. Whittier, 117 Ill. 282, 7 N. E. 642: 'The conveyance of the mortgagor's estate to the mortgagee does not operate as a merger, in equity, unless it was intended to have that effect.' These principles are sustained by Lowman v. Lowman, 118 Ill. 582, 9 N. E. 245; Shaver v. Williams, 87 Ill. 469, and Farrand v. Long, 184 Ill. 100, 56 N. E. 313.

"Three things are relied upon by plaintiff in error as establishing the intention of Charles B. Farwell, at the time of taking the deed, to be to relinquish all right and interest under the mortgage and rely solely upon the deed, namely, the acceptance of the special warranty deed, the cancellation and delivery to Crain of the note and mort-

gage, and the paragraph in the stipulation of facts that the deed was received in satisfaction of the indebtedness represented by the note and mortgage and in lieu of the mortgage security, and to avoid the expense and delay of foreclosure. We are of opinion the evidence in this record does not show Farwell's intention to have been to release all claim and right under the mortgage and rely solely upon the deed. There is nothing in the deed from Crain to him from which such intention is necessarily to be inferred, nor does the delivery to Crain of the canceled note and mortgage prove that such was his intention and purpose. This court held in Richardson v. Hockenhull, supra, that such an intention was not proven by the surrender of the note and the release of the mortgage upon the record by the mortgagee upon the receipt of a deed to the mortgaged premises. See, also, Farrand v. Long, supra. We have already seen that the law presumes a mortgagee to have intended to keep his mortgage alive. In 1 Jones on Mortgages (3d Ed.) § 873, it is said: 'It is presumed as a matter of law that the party must have intended to keep on foot his mortgage title when it was essential to his security against an intervening title or for other purposes of security; and this presumption applies although the parties, through ignorance of such intervening title or through inadvertence, have actually discharged the mortgage and canceled the note.'"

The intention of Mrs. Saum was clearly shown when she received this deed, to the effect that she did not wish to obliterate her mortgage security. She and her agent in carrying out this thought immediately went to the proper office and had the tax sales certificates assigned to her, and the understanding then was that she was to place the deed and said certificates for safekeeping until the release of the Hine mortgage was obtained. The agent left shortly and was gone for several months, and by some confusion she gained the impression that the Hine mortgage had been released and she then placed her deed of record and canceled the tax sales certificates. The foregoing is affirmative evidence that she did not intend that a merger should take place which would extinguish her rights as mortgagee, as it was necessary that same be preserved for her protection. Her negotiations to obtain the release of the Hine mortgage and her belief that the same had been released clearly indicate her intention not to let the Hine mortgage in ahead of her claim. Furthermore, she had never released her mortgage, which is evidence of the same nature. It was to her benefit and for her interest that her mortgage do not merge in

order to protect her rights, and, therefore, in the absence of express intention, her intention would be presumed in accordance with her interests. The defendant in error, however, contends that because Mrs. Saum took possession of the property, improved the same, and has been collecting the rents therefrom, such is conclusive evidence of her intention that her mortgage merged in her title, and thereby became obliterated. We do not agree with this contention. It becomes pertinent to inquire, What was she expected to do? She had an interest to protect, the property was not worth her mortgage, the owners had left it, and it was depreciating in value, taxes were accumulating against it, repairs and renovations were badly needed, and certainly her taking possession under such circumstances is consistent with the protection of her rights as a lienholder. Hine is in no worse condition in any event. He has parted with nothing which entitled him to be advanced to the position of prior lienholder and no reason consistent with justice and equity has been presented why he should be given this favored position. He seeks to obtain it upon a pure technicality. There is applicable here the expressions of the Supreme Court of Mississippi in Cade v. Toler, 124 So. 793, wherein that court, in disposing of a claim of a junior lienholder under circumstances in many respects similar to the claim of Hine in the case at bar, said:

"What right has appellant, whose deed of trust was junior to that of appellee, to complain that appellee's deed of trust is kept alive? How is appellant thereby injured? He gets what he bargained for. Under the law he had no right to take any new step with reference to the land because of the change in the form of appellant's original security. Appellant was not misled by the compromise and settlement made by appellee and Day, resulting in the quitclaim deed to the land by the latter to the former. Appellant was not thereby induced to advance any new consideration to the mortgagor, Day."

That court also quotes from one of its prior decisions (Cansler v. Sallis, 54 Miss. 446, 450) as follows:

"Shall he be allowed to gain an accidental advantage by a transaction with which he had no concern? If it was the intention of the parties to the original security to keep it alive, * * * the carrying out of that intention in no manner harms him. His rights remain wholly unaffected, and this is all he can ask."

This cause should be reversed, with instructions to the trial court to decree and

156

declare that there has been no merger of the mortgage held by Mrs. Saum, and that the same be decreed a first and prior lien upon the premises, and that the mortgage of Hine be declared an inferior and junior lien upon the premises, and further proceedings be had therein consistent with the views herein expressed. However, nothing herein contained is intended to affect the question of redemption and subrogation under the statute on the part of defendant in error if he desires to avail himself thereof.

The Supreme Court acknowledges the aid of Attorneys Calvin Jones, Kittie C. Sturdevant, and Malcolm W. McKenzie in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Jones and approved by Miss Sturdevant and Mr. McKenzie, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS, CORN, and GIBSON, JJ., concur. RILEY, BAYLESS, BUSBY, and WELCH, JJ., absent.