CITIZENS SECURITY BANK OF BIXBY, Oklahoma, Appellant,

v.

John L. COURTNEY and Betty J. Courtney, husband and wife, Overhead Door Company of Tulsa, Inc., a corporation, Bradley's Heating and Air Conditioning, J & R Heating and Air Conditioning Company, Painters Supply of Oklahoma, Inc., a corporation, a/k/a Pan American Paint Co., d/b/a Painters Supply Co. of Tulsa, Inc., Marvin Dorris, Jr. and Wanda L. Dorris, d/b/a Marlee Carpets, M & M Lumber Company, Plywood of Tulsa, Mager Mortgage Company, and Guaranty Loan & Investment Corporation of Tulsa, Inc., a corporation, Appellees.

No. 49745.

Court of Appeals of Oklahoma, Division 2.

Sept. 13, 1977.

Rehearing Denied Oct. 4, 1977.

Certiorari Denied Dec. 21, 1977.

Released for Publication by Order of Court of Appeals Dec. 22, 1977.

Joe Francis, Tulsa, for appellant.

Andrew T. Dalton, Jr., Tulsa, for appellee Bradley's Heating & Air Conditioning.

Paul F. McTighe, Jr., Tulsa, for appellee Pan American Paint Co.

Harvey C. Carpenter, Tulsa, for appellee J & R Heating and Air Conditioning Co.

Larry D. Leonard, Tulsa, for appellee Mager Mortgage Co.

William R. Grimm, Tulsa, for appellee M & M Lumber Co.

James T. Guthrie, Bixby, for appellees Marvin Dorris, Jr. and Wanda Dorris.

BRIGHTMIRE, Presiding Judge.

The question raised here is whether the trial court correctly applied the equitable doctrine of merger in finding that plaintiff bank's first mortgage lien was extinguished by the acquisition of a quitclaim deed to the mortgaged property from the mortgagor.

I

On March 17, 1972 John Courtney and his wife obtained a $29,100 development loan from the Citizens Security Bank of Bixby, Oklahoma and gave a mortgage on the undeveloped site to secure their promissory note. Following completion of some construction the Courtneys defaulted on the note as well as on a couple of junior secured obligations and failed to pay several materialmen who filed lien claims. Most of these creditors filed lawsuits during 1973 and obtained judgments against the Courtneys.

On February 19, 1975 the bank, Citizens Security Bank of Bixby, Oklahoma obtained a quitclaim deed to the mortgaged property from the Courtneys shortly before the latter instituted bankruptcy proceedings. The following June the bank filed this suit against the Courtneys and all other creditors asking that its mortgage be foreclosed and that defendants be adjudged to have no interest in the property.

Most of defendant creditors filed cross-actions asking the court to adjudicate that

their judgment liens were prior to the bank's for the reason that the bank's first mortgage merged into the title taken by the bank and disappeared.

On April 15, 1976 the trial court sustained the motion of a defending materialman for a summary judgment. The bank moved for a new trial which was overruled on May 20, 1976 and from this order the bank appealed four days later. Then on June 8, 1976 there was filed a second document entitled "Decree of Foreclosure and Journal Entry," also signed by the trial judge reciting that on the same day the summary judgment was granted he "heard evidence" at a "nonjury trial" attended by all parties and found that the quitclaim deed "was delivered [to] and received [by the bank] with the intent that the property would not be subject to the jurisdiction of the bankruptcy proceedings and to avoid a deficiency judgment against the . . . Courtneys . . . [and] that the mortgage interest of the plaintiff [bank] and the title of the plaintiff have merged and that the note referred to above has been discharged by operation of law." Therefore the court decreed defendants' claims to be superior to plaintiff's and defendants were authorized to levy upon the land in question, sell it and, after paying costs and attorneys' fees, to use the proceeds to satisfy the defending creditors save Guaranty Loan & Investment Corporation, the holder of a second mortgage, who had earlier filed a disclaimer, and Overhead Door Company, who had failed to begin timely foreclosure of its lien.

The summary judgment order signed by the trial judge recited it was entered on April 15, 1976 and was evidently prepared, filed, and mailed to the parties by Attorney Joe Francis on behalf of plaintiff bank on April 21, 1976. The other final order does not disclose who prepared it, or when, but it was approved as to form by bank's original attorney, David Cerchie, and filed June 8, 1976. Under these circumstances an un-usual situation is presented by the trial judge's signing of two seemingly inconsistent final orders in that appellant bank discusses the merger issue as though no trial has yet taken place while appellees argue the same issue on the basis of the doctrine having been applied to facts found following a nonjury trial.

## II

■ Under the view we take of the applicable law, however, it is unnecessary to determine whether there was a trial or not on April 15, 1976. As appellees point out in their brief the parties are not divided about the law of merger but about whether the evidence is sufficient to support a finding that the bank by accepting a quitclaim deed on subject realty from the bankrupt Courtneys intended that its first mortgage lien thereon be merged into the title. In our opinion it was not.

## III

■ The so-called doctrine of merger[1] is really an exception to the common law rule that when two legal estates meet in the same person a merger takes place—a rule that is statutory in this state[2]—and is a creation of equity. The primary case reference for the doctrine in this state is *Yoder v. Robinson,* 45 Okl. 165, 145 P. 775 (1915) which embraced the universally accepted exception. And it remains the law. *American-First Title & Trust Co. v. First Fed. Sav. & Loan Ass'n,* Okl., 415 P.2d 930 (1965).

*Yoder* adopts the language used in 2 J. Pomeroy, *Pomeroy's Equity Jurisprudence,* § 788 (4th ed. 1918) to describe the exception's essence and effect, which is, in short, that where the owner of, say, the legal estate acquires a lesser equitable estate, the merger of title that takes place at law does not necessarily take place in equity. On the contrary equity leans away from merger under such circumstances. Ultimately it is the "intention of the one acquiring the two interests [that] controls." If it is expressed

---

**1.** This seems to be a misnomer. The equitable principle relates to nonmerger.

**2.** See 42 O.S.1971 § 22 which provides that the "sale of any property on which there is a lien, in satisfaction of the claim secured thereby . . . . extinguishes the lien thereon."

then it will be followed, but if it is not and "it appears from all [the] circumstances to be for the benefit of the party acquiring both interests that a merger shall not take place . . . then [an] intention . . [to that effect] will be presumed . . .." Following this *Yoder* quote, Pomeroy restates the same rule in a negative form this way. "If from all the circumstances a merger would be disadvantageous to the party, then his intention that it should not result will be presumed . . .."

And in § 793 Pomeroy speaks to the precise situation we have here, saying: "Where a mortgagee takes a conveyance of the land from the mortgagor or from a grantee of the mortgagor, if the transaction is fair, *the presumption of an intention to keep the security alive is very strong.* It is generally for the interests of the party in this position that the mortgage should not merge, *but should be preserved to retain a priority over other encumbrances.*" (emphasis supplied) This extension of the antimerger principle was adopted and applied in *Saum v. Hine,* 178 Okl. 151, 61 P.2d 1059 (1936).

▮ Of course, as Pomeroy also emphasizes later in § 794, equity's merger inhibiting intervention is aimed at doing substantial justice, and it is not available to aid in perpetrating "a fraud or other unconscientious wrong . . .."

## IV

Turning now to the facts here we will review those suggested by appellees as being the "operative facts" which provide evidence of an intent by the bank to merge its mortgage into the title it acquired.

The first such fact, say appellees, is that the bank took the deed in full satisfaction of its claim against the grantors. Our reaction to this is that if we presume it did do so, the act is not inconsistent with an intention to keep its mortgage alive for the purpose of preserving its priority over junior encumbrances.

Secondly, it is said that the fact there was no reservation of interest in the quitclaim deed accepted by the bank is evidence that the bank intended to effect a merger.

The reasoning is difficult for us to follow. The deed was executed by the legal title holders, the Courtneys. What interest was there for them to reserve? It would appear that if defendants' first "operative fact" is correct, then anything less than an unconditional quitclaiming of grantors' interest would tend to defeat or at least impair the object of the conveyance.

Thirdly, appellees conclude that the bank's offering the property for sale on open market "without reservation of or subject to a mortgage . . . evidences intent to merge." How this can be is not clear. Surely it would be impossible to sell real property encumbered with a mortgage indebtedness and judgment liens exceeding its value. On the contrary we think that offering the property to prospective purchasers free and clear of all encumbrances not only was not inconsistent with the intent to maintain its position of priority as between its mortgage and the claims of junior encumbrancers, but to the contrary was evidence that a merger was not intended.

Appellees' fourth item of evidence relied on is quite similar to its second one—that one of the subject lots "is the subject of a contract for sale but without reservation of or subject to any mortgage interest." Our comments with regard to the second item apply likewise to this one.

The fifth thing advanced as evidence of intended merger is that the "bank is attempting to quiet title to effectuate a previously negotiated sale." Here again appellees refer to a fact related to the bank's sale of the mortgaged property and as we said before, the bank's act of selling the property and doing what is necessary to convey a clear title is entirely consistent with, if not proof of, an antimerger intent. Indeed the act of quieting title against all junior encumbrances seems to us to be strong evidence that the bank, by its acquisition of title to subject property, never intended to impair its position of priority over appellees.

Appellees' last suggested "fact" said to reveal an intent to merge is a bit too subtle for us. We quote. "The analogy to the

Oklahoma law of foreclosure and deficiencies, the bank has 'foreclosed' and waived any deficiency thereby evidencing full satisfaction and intent to merge." What this incomplete sentence is intended to mean is not clear. If it means that accepting the deed in full satisfaction of the Courtney debt and the selling of the property is a constructive foreclosure then again we see in such actions, not an intent to merge, but the very opposite—an intent to satisfy the first mortgage indebtedness from the proceeds realized from the sale of the property which cannot be done unless the bank can transfer the property free and clear of defendants' claims.

No one can deny that under all the circumstances of this case it is to the advantage of the bank that a merger not take place giving rise to a very strong presumption that the bank intended to keep its first mortgage alive. It would be straining credulity to assume the bank intended to ignore its self-interest by forfeiting its number one security rank.

Since defendants have not brought to our attention any evidence capable of overthrowing the equitable presumption of non-merger and we have not otherwise found any in the record, it follows that the trial court erred in finding that plaintiff's mortgage interest did merge into its title.

### V

Defendants secondarily argue that the Courtneys' conveyance to the bank was in contemplation of bankruptcy and therefore a transaction denominated fraudulent by 11 U.S.C. §§ 107(d)(2)–(4) (1970)—and because the bank has thus soiled its hands with fraud, equity will not reach out to help it.

It is not necessary to determine the effect of the transfer, so far as the federal Bankruptcy Act is concerned, for the reason that is a matter which could and should be decided by the federal court. Such a charge can attain significance here only if it supports a showing that the transfer imposed inequitably upon defendants. It is perhaps to this end that defendants' condemnation of the bank is directed when it says that the bank "chose to ignore judicial procedure governing foreclosure and bankruptcy" thereby depriving defendants of "fundamental and valuable rights . . . [namely] Due Process of Law Rights to be heard and given notice [of] an opportunity to bid upon the property in a foreclosure sale."

The short answer to this contention, we think, is that since the bank did what it had a right to do under state law it could not be characterized as fraudulent. Secondly, defendants have suffered no lack of due process in that they have been afforded ample opportunity in this lawsuit to attack the transaction from its inception and adduce evidence that plaintiff, somewhere along the line, did something that deprived them of money they should have received. If, for instance, the bank underpriced the lots, or received money in excess of the first mortgage, then defendants should have brought such facts to the attention of the court with a request for equitable relief. But it did not, and we are unwilling to presume the bank has done any more than try to protect itself against loss on the Courtney loan.

Parenthetically we might add that in the belated journal entry of judgment prepared and filed on June 8, 1977, the trial court found that defendants were afforded due process of law by reciting that a nonjury trial was held on April 15. This finding is supplemented by an admission defendants made in their brief, namely, that all parties "had been given every opportunity to present controverting evidence . . .." Not only does this destroy defendants' appellate posture but in our view obviates the need for any further proceedings on the issue.

Both of the trial court's judgments are therefore reversed and the cause is remanded with directions to recognize the priority of the bank's first mortgage and to grant it appropriate equitable relief.

BACON and NEPTUNE, JJ., concur.