NO.   94-045

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

RICHARD A. **WELDON** and MONICA A. **WELDON,**

      Plaintiffs and Appellants,

  **v.**

MONTANA BANK, Successor to MONTANA BANK
OF BILLINGS, a Montana corporation,

      Defendant and Respondent.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone,
              The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          David A. Klibaner, Attorney at Law,
          Denver, Colorado

          Gilbert U. Burdett, Burdett Law Firm,
          Billings, Montana

      For Respondents:

          Kenneth S. Frazier and Michael K. **Rapkoch,**
          Felt, Martin **&** Frazier, Billings, Montana

Submitted on Briefs:   September 15, 1994

Decided:   November 22, 1994

FILED

NOV 22 1994

Filed:

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Plaintiffs Richard and Monica Weldon appeal the order of the Thirteenth Judicial District Court, Yellowstone County, granting summary judgment in favor of Montana Bank. We affirm.

We state the issues on appeal as follows:

1. Does the language of the mortgage provision at issue in this case create contract-based obligations in the Bank from which the Weldons can state a claim for breach of contract?

2. Did the Weldons suffer a deprivation of contractual benefit from which they may claim a breach of the implied covenant of good faith and fair dealing?

The Weldons owned a 2375 acre ranch on Blue Creek outside of Billings. They claim that in early 1983 they were solicited by Ralph Skaggs of Kreitzberg Associates, Inc., a real estate firm. Skaggs presented them with a plan for purchasing a ranch in Carbon County on contract, providing that the Weldons allow the Kreitzberg firm to offer for sale about 1500 acres of the Blue Creek Ranch. Neither Skaggs nor the Kreitzberg firm is a party to this suit.

According to the Weldons, on or about June 1, 1983, Skaggs arranged a meeting between the Weldons and Montana Bank to discuss obtaining a loan for the down payment on the Carbon County ranch. During this meeting, the Weldons claim that the Bank "was informed of the necessity of Kreitzberg Associates, Inc. selling the [Blue Creek] Ranch to repay the loan for the down payment and to make the contract payments on the [Carbon County] ranch." On June 29, 1983,

2

the Bank and the Weldons executed Note No. 827 in the amount of $160,000. To secure the note, the Weldons mortgaged to the Bank approximately 1280 acres of the Blue Creek ranch.

On August 2, 1983, the Weldons entered into a written listing agreement with the Kreitzberg firm for the sale of 1500 acres of the Blue Creek ranch at $1000 per acre. They claim that in November 1983, Skaggs informed them that the firm could find no purchasers at $1000 per acre: however, Skaggs stated that his own partnership, Double S Investors, would purchase the property at $600 per acre. The Weldons accepted this offer.

Because 1280 of the 1500 acres were under mortgage, the Weldons claim that the Bank took financial statements from Double S Investors, approved the purchase, and placed the purchase agreement "in its file as further security for the repayment of loans made to the Weldons." The Weldons claim that the Bank

> knew the Agreement between the Weldons and Double S Investors required the property to be surveyed into 20 acre parcels: required executed warranty deeds to each 20 acre parcel be placed in escrow: and required payment by Double S Investors to Weldons of $1,000.00 per acre for release of such deeds.

The Bank admits it was aware of the agreement's provisions.

The Weldons claim that sometime after October 31, 1984, Skaggs met with the Bank and requested that it execute a partial release on 260 of the 1280 acres encumbered by the Weldon's mortgage. They additionally claim that Skaggs presented the Bank with a deed which contained the forged or fraudulently obtained signatures of the

Weldons and which purported to transfer ownership of the 260 acres to Double S Investors.

The Bank executed a partial release of the mortgage on November 14, 1984. The Bank did not communicate with or notify the Weldons before executing the release, nor did it request or receive any funds from the Weldons or reduce their indebtedness under the outstanding note.

On November 13, 1992, seven years and 364 days after the partial release, Weldons brought suit alleging that the Bank was aware of the agreement between the Weldons and Double S Investors, that Double S Investors failed to comply with the agreement, and that by executing the partial release, the Bank breached its fiduciary and contractual duties and breached the covenant of good faith and fair dealing.

The Bank moved for summary judgment on April 5, 1993, arguing

> that the claims raised by the Weldons, notwithstanding that they may be labeled "breach of contract" claims, are subject to Section 27-2-204, MCA which provides a three year limitations period. The Bank's argument is that the claims made by the Plaintiffs are tort claims regardless of how they are labeled, are thus barred by the three year limitations period, and the Bank is entitled to judgment as a matter of law.

On July 30, 1993, the District Court ordered the parties to submit additional briefs regarding the meaning of the mortgage provision on which the Weldons base their claims. Both parties submitted additional briefs, and the District Court granted summary judgment in favor of the Bank on October 13, 1993.

4

ISSUE 1

Does the language of the mortgage provision at issue in this case create contract-based obligations in the Bank from which the Weldons can state a claim for breach of contract?

"In reviewing a grant of summary judgment, our standard of review is identical to that of the trial court." Kuhns v. Koessler (Mont. 1994), 880 P.2d 1293, 1295, 51 St. Rep. 800, 801. We examine the record to determine whether genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law. Kuhns, 51 St. Rep. at 801; Rule 56(c), M.R.Civ.P. "When a motion for summary judgment is made and supported, the nonmoving party cannot rest on allegations or the denials of its pleadings, but must set forth specific facts showing that there is a genuine issue for the trial court." Hennen v. Omega Enterprises, Inc. (1994), 264 Mont. 505, 508, 872 P.2d 797, 799. In reviewing conclusions of law, we will determine whether the district court correctly interpreted the law. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 460, 474, 803 P.2d 601, 603.

The disposition of this appeal turns on the meaning of the following provision contained in the mortgage contract between the Weldons and Montana Bank:

> A release of this mortgage is to be made at the expense
> of the Mortgagors, on full payment of indebtedness
> secured thereby.

The Weldons argue that the language of the provision "requires the Bank to maintain the mortgage in full effect until final

5

payment of their indebtedness," or that "[a]t the least the language is ambiguous and allowed Weldons to believe the Bank would notify them of an intended release prior to full payment.*'  The Bank counters that the language is not ambiguous and creates only a narrow obligation in the Bank to release the mortgage at the **Weldons'** expense upon payment of the underlying indebtedness.  The Bank argues that

> [a]ttempts by the plaintiffs to create what amount to tort-type duties on the basis of this contractual language, and thereby escape the three year statute of limitations which governs in this case, should be rejected since there is nothing in this provision which even suggests that the Bank owed contractual duties of the type asserted by the plaintiffs.

Promissory notes and mortgages are contracts and are examined under the rules of construction applicable to contracts.  First National Bank and Trust Co. v. Lygrisse (Kan. 1982), 647 P.2d 1268; U.S. Bldg. and Loan Ass'n v. Gardiner (1930), 87 Mont. 586, 289 P. 555; Union Central Life Insurance Co. v. Jensen (1925) 74 Mont. 70, 237 P. 518.  "As a general rule, the construction and interpretation of written agreements, including contracts, is a question of law for the court to decide."  First Security Bank v. Vander Pas (1991), 250 Mont. 148, 152-53, 818 P.2d 384, 387: Monte Vista Co. v. Anaconda Co. (1988), 231 Mont. 522, 528, 755 P.2d 1358, 1362.  It is a question of law for the court to determine whether ambiguity exists sufficient to submit the question of the parties' intent to the jury.  Vander Pas, 818 P.2d at 387; Monte Vista Co., 755 P.2d at 1362.  "When the language of the contract is

6

clear and unambiguous on its face, then it is the duty of the court to enforce the contract as the parties intended. <u>Vander Pas</u>, 818 P.2d at 387; <u>Monte Vista Co.</u>, 755 P.2d at 1362.

The District Court in this case concluded that the language of the provision is unambiguous and simply requires the mortgagors to bear the expense of a release. The District Court further concluded that a creditor may cancel or release a mortgage at any time without consideration and without the consent of the mortgagor.

The Weldons contend on appeal that a genuine issue of material fact exists regarding the interpretation of the provision. However, the initial determination whether an ambiguity exists in a contract is a question of law. <u>Monte Vista Co.</u>, 755 P.2d at 1362. We hold that the District Court properly rejected the Weldons proffered interpretation which sought to impose a duty upon the Bank to maintain the mortgage in full effect until final payment of the indebtedness.

Sections 71-1-211 and -212, MCA, which enumerate the statutory duties of a bank regarding the release of a mortgage, do not require a bank to maintain a mortgage in the manner asserted by the Weldons. Moreover, this Court has held that, because a mortgage is a lien executed for the benefit of the lender, the lender may cancel or release the mortgage at any time with or without consideration from or the consent of the mortgagor. Mueller v. Renkes (1904), 31Mont. 100, 77 P. 512. We reaffirm this principle

as set forth in Mueller. As a matter of law, the District Court properly determined the language of the provision to be unambiguous and correctly interpreted it to create a narrow obligation in the Bank to release the mortgage, at the Weldons' expense, upon full payment. Because the mortgage provision did not create a contractual obligation in the Bank to maintain the mortgage in the manner asserted by the Weldons, a breach of contract claim based on the provision cannot be sustained.

<u>ISSUE 2</u>

Did the Weldons suffer a deprivation of a contractual benefit from which they may claim a breach of the implied covenant of good faith and fair dealing?

The Weldons argue that a breach of the covenant of good faith and fair dealing occurs "when the discretion conferred by the contract has been misused to deprive the other party of the benefit of the bargain." They assert that they have provided sufficient "factual inferences" to demonstrate that the Bank acted arbitrarily, capriciously, or in violation of reasonable commercial standards, and therefore, breached the implied covenant. The District Court, however, concluded that the implied covenant was not breached because the Bank's partial release did not deprive the Weldons of the benefit of the contract.

In Story v. City of Bozeman (1990), 242 Mont. 436, 450, 791 P.2d 767, 775, we set forth the following framework for breach of implied covenant claims: (1) every contract contains an implied

8

covenant of good faith and fair dealing: (2) a breach of the covenant is a breach of the contract: (3) a breach of an express term of the contract is not a prerequisite to a breach of the implied covenant; (4) the conduct required by the implied covenant is honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade; and (5) when one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is breached.

The Weldons claim that "[t]he District Court never engaged in the analysis which is required under the law of the covenant" to determine whether the Bank's "conduct was within reasonable commercial practices or was arbitrary or capricious." This is incorrect. As discussed under Issue 1, the District Court properly concluded that the Bank was under no contractual obligation to maintain the mortgage until full payment was received.

While it is true that the covenant of good faith and fair dealing is implied in every contract, the claims asserted by the Weldons do not implicate the mortgage contract between them and the Bank: instead, their claims focus on peripheral aspects of their relationship with the Bank. As the United Stated District Court of Montana stated in addressing the implied covenant:

> Without some attempt by one party to "[use] discretion conferred by the contract to act dishonestly or to act outside the accepted commercial practices to deprive the other party of the benefit of the contract," it is questionable whether any breach of the covenant occurred,

9

even if the conduct amounts to breaches of other common law obligations.

Shupak v. New York Life Ins. Co. (D. Mont. **1991)**, 780 F. Supp. 1328, 1342 (alteration in original) (citing _Story_, 791 **P.2d** at 775); **Richland** Nat'l Bank and Trust v. Swenson **(1991),** 249 Mont. 410, 420, 816 **P.2d** 1045, 1051-52. Because the Bank did not owe a duty to the Weldons to maintain the contract until full payment, we agree with the conclusion of the District Court that the Weldons were not deprived of a contractual benefit when the Bank partially released the mortgage, and therefore, cannot state a claim for breach of the implied covenant.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

10

November 22, 1994

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Gilbert U. Burdett, Esq.
Burdett Law Firm, P.C.
P.O. Box 1777
Billings, MT 59103-1777

David A. Klibaner
2401 Fifteenth St., Ste. 290
Denver, CO 80202

Kenneth S. Frazier, Esq. & Michael K. Rapkoch, Esq.
Felt, Martin & Frazier, P.C.
P.O. Box 2558
Billings, MT 59103-2558

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy