2006 OK 73

**BANK OF the WICHITAS, an Oklahoma Banking Corporation, Plaintiff/Appellant,**

v.

**Maxine LEDFORD, Herman Ledford, Voyle C. Holder, and Janet S. Holder, Defendants/Appellees,**

**Tommie J. Holder, Ellen J. Holder, Janet S. Wright, Jackson County Treasurer, and The Board of County Commissioners of Jackson County, Defendants,**

**Bank of the Wichitas, an Oklahoma Banking Corporation, Plaintiff/Appellant,**

v.

**Maxine Ledford, Herman Ledford, Voyle C. Holder, and Janet S. Holder, Defendants/Appellees,**

**Tommie J. Holder, Ellen J. Holder, and Deanna Beamon Miller, Kiowa County Treasurer, and The Board of Commissioners of Kiowa County, Defendants.[1]**

No. 102,946.

Supreme Court of Oklahoma.

Oct. 10, 2006.

1. The style of this appeal has been corrected to reflect that Tommie J. and Ellen J. Holder are not opposing the relief sought by appellant. Rule 1.25, Oklahoma Supreme Court Rules, 12 O.S.2001 Ch. 15, App. 1, states: "A party who is neither seeking relief on appeal, nor opposing another party's attempt to seek relief on appeal, has no appellate designation and remains listed in the style ... [bearing] the same designation as [that] in the trial court." The style has also been changed to correct the spelling of the Kiowa County Treasurer's name. Appellate correction of misspelled names in the style of a case on appeal is authorized by the provisions of 20

O.S.2001 § 3002.  *See Keel v. Wright,* 1995 OK    18, ¶ 1, n. 1, 890 P.2d 1351, 1352, n. 1.

Paul R. Foster and Carrie L. Foster, Paul Foster Law Offices, P.C., Norman, OK, and Newell E. Wright, Jr., Cheyenne, OK, for Appellant.

Nicholas D. Garrett, Lawton, Oklahoma and Ernest F. Godlove, Godlove, Mayhall, Dzialo, Dutcher & Erwin, Lawton, OK, for Appellees.[2]

OPALA, J.

¶ 1 The dispositive issues tendered on appeal are: (1) Are the mortgages at issue valid and enforceable? and if so (2) Is appellant entitled to require appellees to marshal assets? and if not (3) Are appellees entitled to summary judgment of foreclosure, authorizing them to choose the order in which the mortgaged property is sold and to be reimbursed from the proceeds of such sale in the full amount tendered by them in satisfaction of the secured debt? We answer the first question in the affirmative and the second and third questions in the negative.

## I

### ANATOMY OF LITIGATION

¶ 2 On the 4th day of March 1997, Horace K. Holder ("Horace"), an elderly man residing in a nursing home, executed a durable power of attorney naming his three children, Tommie J. Holder ("Tommie" or "debtor"), Maxine Ledford ("Maxine"), and Voyle C. Holder ("Voyle"), as his attorneys-in-fact, and granting them *inter alia* the power to mortgage his property. Horace had periodically borrowed funds from plaintiff, Bank of the Wichitas ("Bank" or "plaintiff"), in connection with his farming and ranching activities, but had never mortgaged any of his land to secure his loans.

¶ 3 On 20 March 1997, Tommie executed a promissory note (the "1997 note") payable to Bank in the principal amount of $150,000.00. On the same date, Tommie, Maxine, and Voyle, as Horace's attorneys-in-fact, executed two mortgages (the "1997 mortgages") covering approximately 1,760 acres owned by Horace in Kiowa and Jackson Counties. Horace died on 25 March 1997, devising the 1,760 acres described in the 1997 mortgages to Tommie, Maxine, and Voyle, with Tommie receiving approximately 500 acres, Maxine 1,000 acres, and Voyle 260 acres. Tommie thereafter made sporadic payments on the 1997 note.

¶ 4 In 1999, Tommie, his wife, and a third person executed a promissory note to Bank in the amount of $349,000.00. To secure this note, Tommie gave Bank a lien on most of his personal property and a mortgage on the 500 acres he had received by testamentary devise from Horace. Tommie was unable to make the payments on this note either.

¶ 5 In 2003 Bank declared both of Tommie's notes to be in default. It then commenced this litigation to collect on the notes and foreclose the 1997 and 1999 mortgages. On 7 January 2004, the trial court sitting in Kiowa County gave Bank summary relief on the two notes. On 18 March 2004, Tommie and his wife filed a bankruptcy petition which ultimately resulted in the discharge of Bank's judgment debt. On 1 September 2004, the foreclosure actions in Kiowa and Jackson Counties were consolidated for disposition by the district court sitting in Jackson County.

---

**2.** Identified herein are only those counsel for the parties whose names appear on the appellate briefs.

¶ 6 After initially treating the 1997 mortgages as having been validly executed, Maxine and Voyle ("appellees") later filed an amended answer in which they challenged the mortgages' validity on the grounds that Horace had lacked the mental capacity to execute the durable power of attorney naming them as his attorneys-in-fact. Before the trial court had a chance to address that argument, appellees abandoned it, electing instead to argue that the 1997 mortgages were valid and enforceable *as surety instruments* by means of which Horace's property had been used to secure Tommie's 1997 note. Appellees contended that when they took ownership of the property by testamentary devise from Horace, they succeeded to his surety status with all the rights that status entails, including the right to pay their principal's debt and be substituted by equitable subrogation to the creditor's rights with respect to the debt and any collateral securing it.

¶ 7 Acting upon this contention, appellees tendered into court on 16 November 2004 the full amount owed by Tommie on the 1997 note and claimed the right to be substituted by subrogation to Bank's position as plaintiff in the foreclosure of the 1997 mortgages. They asserted that their only obligation to Bank was to pay off Tommie's debt after which they should be free to prosecute the foreclosure action "in any manner as they see fit."

¶ 8 Bank argued that the 1997 mortgages were not at their inception surety instruments and, even if they had originally been given in a surety capacity, appellees could not succeed by testamentary devise to Horace's surety status. Consequently, Bank argued, appellees' offer should be ruled ineffective. Alternatively, and in the event the trial court recognized Maxine and Voyle as sure-

ties and substituted them as plaintiffs in the foreclosure action, Bank moved the court to declare appellees to be senior lien holders under the 1997 mortgages with the duty to marshal assets to protect Bank's junior lien under its 1999 mortgage on Tommie's separate tract. Finally, Bank argued that if the trial court did not order marshaling, it should order all the property subject to the 1997 mortgages sold and the debt repaid proportionately from the property now owned separately by Tommie and appellees.

¶ 9 Maxine and Voyle filed an alternative motion of their own on 10 January 2005. Citing 15 O.S.2001 § 379,[3] they asked the trial court to require Bank to foreclose on Tommie's separately owned property first as property belonging to the principal debtor and, if Bank should fail to do so, declare the sureties' obligation exonerated.

¶ 10 The trial court heard oral argument on 12 January 2005 on the surety issue, concluding that Maxine and Voyle were indeed sureties.[4] Bank asked the trial court to certify the decision for immediate appeal and to defer consideration of its marshaling motion until appellate resolution of the surety issue. On 24 January 2005, Bank changed course and accepted Maxine's and Voyle's tendered offer.[5]

¶ 11 With the surety issue resolved, the trial court on 2 March 2005 heard argument on Bank's alternative motions to marshal assets or to order ratable distribution of foreclosure-sale proceeds, rendering its decision by a journal entry of judgment dated 18 May 2005, in which it not only rejected both of Bank's motions, but also entered a final order disposing of the entire foreclosure action in favor of appellees. Bank moved to vacate the judgment, arguing that insofar as the trial court had decided matters beyond the

3. The provisions of 15 O.S.2001 § 379 state:
   "A surety may require his creditor to proceed against the principal, or to pursue any other remedy in his power which the surety cannot himself pursue, and which would lighten his burden; and if in such case the creditor neglects to do so, the surety is exonerated to the extent to which he is thereby prejudiced."

4. The provisions of 15 O.S.2001 § 371 define a surety as follows:

   "A surety is one who, at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, *or hypothecates property as security therefor.*" (emphasis added)

5. Bank does not appeal from the trial court's ruling that Maxine and Voyle are sureties.

issues heard at the 2 March 2005 hearing, it had violated Bank's right to due process of law. Bank also asked the trial court to reconsider its refusal to order marshaling or ratable distribution of the foreclosure-sale proceeds. The trial court on 17 August 2005 denied Bank's motion to reconsider, but vacated the judgment of foreclosure.

¶ 12 Both sides then filed motions for summary judgment. The trial court on 8 December 2005 gave judgment to appellees, ordering foreclosure of the 1997 and 1999 mortgages and the sale of the property mortgaged in 1997 in whole or in part and "in such order as determined by [appellees]." Because the sale of Tommie's tract first to reimburse appellees pursuant to the 1997 mortgages would leave Bank with little or nothing to satisfy the 1999 debt, Bank appeals. We granted Bank's motion to retain the case for disposition by this court.

## II

### STANDARD OF REVIEW

¶ 13 Summary process—a special pretrial procedural track pursued with the aid of acceptable probative substitutes [6]—is a

search for undisputed material facts which, sans forensic combat, may be utilized in the judicial decision-making process.[7] Summary relief is permissible where neither the material facts nor any inferences that may be drawn from uncontested facts are in dispute, and the law favors the movant's claim or liability-defeating defense.[8] Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim or defense afford legitimate support for *nisi prius* resort to summary process for a claim's adjudication.[9]

¶ 14 Summary relief issues stand before us for *de novo* review.[10] All facts and inferences must be viewed in the light most favorable to the non-movant.[11] Appellate tribunals bear the same affirmative duty as is borne by *nisi prius* courts to test for legal sufficiency all evidentiary material received in summary process in support of the relief sought by the movant.[12] Only if the court should conclude there is no material fact (or inference) in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary relief in its favor.[13]

6. " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Jackson v. Okla. Mem'l Hosp.*, 1995 OK 112, ¶ 15, n. 35, 909 P.2d 765, 773, n. 35. *See also Seitsinger v. Dockum Pontiac, Inc.*, 1995 OK 29, ¶¶ 16–17, 894 P.2d 1077, 1080–81; *Davis v. Leitner,* 1989 OK 146, ¶ 15, 782 P.2d 924, 927.

7. The focus in summary process is not on the facts which might be proven at trial, but rather on whether the evidentiary material in the record tendered in support of summary adjudication reveals only undisputed material facts supporting but a single inference that favors the movant's quest for relief. *Polymer Fabricating, Inc. v. Employers Workers' Compensation Ass'n,* 1998 OK 113, ¶ 7, 980 P.2d 109, 112; *Hulsey v. Mid–America Preferred Ins. Co.*, 1989 OK 107, ¶ 8, n. 15, 777 P.2d 932, 936, n. 15.

8. To that end, the court may consider, in addition to the pleadings, items such as depositions, affidavits, admissions, answers to interrogatories, as well as other evidentiary materials which are offered in acceptable form without objection from other parties or are admitted over the challenging exception. *Polymer, supra* note 7, at ¶ 8, at 113; *Seitsinger supra* note 6 at ¶¶ 16–17, at 1080–81.

9. *Russell v. Bd. of County Comm'rs,* 1997 OK 80, ¶ 7, 952 P.2d 492, 497. *See also Gray v. Holman,* 1995 OK 118, ¶ 11, 909 P.2d 776, 781.

10. An order that grants summary relief, in whole or in part, disposes solely of law questions. It is reviewable by a *de novo* standard. *Brown v. Nicholson,* 1997 OK 32, ¶ 5, 935 P.2d 319, 321. *See also Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084 ("Issues of law are reviewable by a de novo standard and an appellate court claims for itself plenary independent and non-deferential authority to re-examine a trial court's legal rulings.").

11. *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.

12. *Spirgis v. Circle K Stores, Inc.,* 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685 (approved for publication by the Oklahoma Supreme Court).

13. It is not the purpose of summary process to substitute a trial by affidavit for one by jury. Rather, it is to afford a method of summarily terminating a case (or eliminating from trial some of its issues) when only questions of law remain. *State ex rel. Fent v. State ex rel. Okla. Water Resources Bd.,* 2003 OK 29, ¶ 14, n. 31, 66 P.3d 432, 440, n. 31; *Bowers v. Wimberly,* 1997

## III

### THE ISSUE OF FORECLOSURE WAS RIPE FOR SUMMARY ADJUDICATION

¶ 15 Bank argues that appellees' motion for summary judgment was not supported by evidentiary material warranting summary relief. Its argument focuses on appellees' submission with their motion for summary judgment of an affidavit in lieu of a statement of uncontroverted facts. Bank contends that this affidavit fails to conform to the requirements for affidavits set forth in District Court Rule 13(c).[14] The trial court made no ruling on Bank's objection to the affidavit.

¶ 16 We need not decide whether Bank is correct about the affidavit's legal sufficiency. Bank stated in its response to appellees' motion for summary judgment that there remains no substantial controversy as to any material fact. The trial court so found and we agree. Moreover, we see nothing in the trial court's written memorialization of judgment to indicate that the challenged affidavit played any part in that decision. The affidavit was made several months *after* the trial court in its 18 May 2005 Journal Entry of Judgment implicitly found that the 1997 mortgages were valid and enforceable. In rejecting Bank's argument that the mortgages were invalid, the trial court merely confirmed that which it had earlier concluded without the aid of the challenged affidavit. Finally, the trial court's conclusion that the 1997 mortgages are valid and enforceable is one that can be drawn from the terms of the mortgage instruments themselves without resort to anything asserted in the challenged affidavit. Having no reason to consider that the trial judge was influenced in his legal conclusions by the allegedly flawed affidavit in contest, we hold that error, if any, in failing to strike or remove it from the record was harmless.

OK 24, ¶ 18, 933 P.2d 312, 316; *Stuckey v. Young Exploration Co.,* 1978 OK 128, ¶ 15, 586 P.2d 726, 730.

**14.** The procedure governing summary adjudication is set forth at Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App.1. The provisions of Rule 13(c) state in pertinent part:

## IV

### THE 1997 MORTGAGES ARE VALID AND ENFORCEABLE

¶ 17 In its original posture, this case was a foreclosure action brought by Bank to foreclose three mortgages. In its petitions, Bank alleged that the two mortgages executed in 1997 were given to secure Tommie's 1997 note. Faced with the trial court's decision that appellees are sureties and with the fact of appellees' tender of payment of Tommie's debt and their subrogation to Bank's rights under the 1997 mortgages, Bank now argues that the 1997 mortgages are invalid and unenforceable.

¶ 18 Bank relies for this proposition on the following language in the 1997 mortgages:

"This mortgage is given to secure the payment and performance of all the following (the "Debt"): * * * * *

(b) Mortgagor's indebtedness as evidenced by the promissory Note(s) of the same date as this Mortgage, and any modifications, renewals or substitutions of the Note(s), with principal sums, interest and maturity dates as follows:

\* \* \* \* \* \*

i. One promissory note in the amount of $150,000.00 dated 3–20–97 and payable as follows: 15 annual payments of $19,615.53 are due on March 20th of each year beginning 3–20–98, through and including 3–20–2012. These payments to include interest at the rate of 9.9% per annum."

Subparagraph (b) is part of Bank's pre-printed mortgage form. The description of the promissory note contained in subparagraph "i" is typewritten.

¶ 19 Bank contends that the 1997 mortgages by their plain terms are limited to secur-

"The affidavits that are filed by either party shall be made on personal knowledge, shall show that the affiant is competent to testify as to the matters stated therein, and shall set forth matters that would be admissible in evidence at trial."

ing the "Mortgagor's indebtedness" as stated in subparagraph (b) quoted above. Since Horace was the mortgagor and since the trial court has ruled he had no outstanding debt to Bank, Bank argues that the mortgages actually secure nothing. Tommie's 1997 note cannot be the subject matter of the 1997 mortgages, says Bank, because it is not a debt owed by the mortgagor. In effect, Bank proposes to resolve the inconsistency between the preprinted language referring to the mortgagor's indebtedness and the type-written portion identifying Tommie's 1997 note as the secured debt by giving no effect to the typewritten portion.

¶ 20 Under Oklahoma law, a mortgage is a security instrument in the nature of a contract.[15] The rules of construction and analysis applicable to contracts apply equally to mortgages.[16] The primary goal of contract interpretation is to determine and give effect to the intention of the parties at the time the contract was made.[17] In arriving at the parties' intent, the terms of the instrument are to be given their plain and ordinary meaning.[18] A contract should receive a construction which makes it reasonable, lawful, definite and capable of being carried into effect if it can be done without violating the intent of the parties.[19] Where the language of a contract is clear and unambiguous on its face, that which is expressed within its four corners must be given effect.[20] We review the meaning assigned by the trial court to a contract as a matter of law. Questions of law are reviewed by a *de novo* standard.[21]

¶ 21 When viewed in their totality, the 1997 mortgages are susceptible of but one reasonable interpretation: that they were intended to secure Tommie's 1997 note to Bank. It is a well-established rule that where part of a contract is typed and part is printed, and the typed and printed parts are inconsistent, the typed portion will control over the printed part absent a clear indication of a contrary intent.[22] The typewritten

15. A mortgage is a contract between the lender and the borrower. See generally BLACK'S LAW DICTIONARY (7th ed.1999); *Fourth Nat'l Bank of Tulsa v. Eidson*, 1947 OK 379, ¶ 16, 236 P.2d 491, 494 (treating a mortgage as a contract); *Blair Constr. Inc. v. McBeth*, 273 Kan. 679, 44 P.3d 1244, 1252 (2002); *Calomiris v. Woods*, 353 Md. 425, 727 A.2d 358, 362 (1999); *Sonny Arnold, Inc. v. Sentry Savings Ass'n*, 633 S.W.2d 811, 815 (Tex.1982); *Weldon v. Montana Bank*, 268 Mont. 88, 885 P.2d 511, 514 (1994); *Cache Nat'l Bank v. Lusher*, 882 P.2d 952, 956–57 (Colo.1994); *Freese Leasing, Inc. v. Union Trust and Sav. Bank*, 253 N.W.2d 921, 924 (Iowa 1977); *County of Keith v. Fuller*, 234 Neb. 518, 452 N.W.2d 25, 31 (1990); *Bank of Ephraim v. Davis*, 559 P.2d 538, 540 (Utah 1977).

16. *Herrington v. Murphy*, 1968 OK 155, ¶ 12, 446 P.2d 595, 597; *Blair Const., Inc., supra* note 15 at 1252; *Calomiris, supra* note 15 at 362; *Weldon, supra* note 15 at 514; *Freese Leasing, supra* note 15 at 924; *County of Keith, supra* note 15 at 31; *Bank of Ephraim, supra* note 15 at 540; *Ogan v. Ogan*, 122 Ohio App.3d 580, 702 N.E.2d 472, 474 (1997); *Sonny Arnold, Inc., supra* note 15 at 815.

17. *Oxley v. Gen. Atl. Resources, Inc.*, 1997 OK 46, ¶ 14, 936 P.2d 943, 945; *Amoco Prod. Co. v. Lindley*, 1980 OK 6, ¶ 34, 609 P.2d 733, 741.

18. *K & K Food Services, Inc. v. S & H, Inc.*, 2000 OK 31, ¶ 7, 3 P.3d 705, 708.

19. *Mortgage Clearing Corp. v. Baughman Lumber Co.*, 1967 OK 232, ¶ 13, 435 P.2d 135, 139; *Oxley, supra* note 17 at ¶ 14, at 945–46. *See* the provisions of 15 O.S.2001 § 159, which state:

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties."

20. *Lewis v. Sac and Fox Tribe of Okla. Housing Auth.*, 1994 OK 20, ¶ 27, 896 P.2d 503, 514.

21. *M.J. Lee Constr. Co. v. Okla. Transp. Auth.*, 2005 OK 87, ¶ 11, 125 P.3d 1205, 1210.

22. *Briggs v. Waggoner*, 1962 OK 108, ¶ 13, 375 P.2d 896, 898. *See* the provisions of 15 O.S.2001 § 167, which state:

"Where a contract is partly written and partly printed, or where part of it is written or printed under the special directions of the parties, and with a special view to their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties and particular contract in question the written parts control the printed parts, and the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded."

*See also* RESTATEMENT (SECOND) OF THE LAW OF CONTRACTS § 203 (1981), in which the following rule is noted:

provision of the mortgage identifying Tommie's note as the secured debt clearly shows that the parties intended to secure by the father's property the son's note, the printed text's reference to the mortgagor's indebtedness notwithstanding.[23]

¶ 22 It is also elementary that contracts must be construed in their entirety, and not based upon detached and isolated portions.[24] We have reviewed the mortgages at issue and discovered another provision not cited by either party, which indicates that the mortgage instrument itself contemplates that it might be used by a person other than a signatory to the secured note. That provision states:

> "Mortgagor further agrees (unless Mortgagor did not sign the Note(s), in which case Mortgagor only is signing to grant this Mortgage). . . ."

The presence of this provision indicates that regardless of the pre-printed language appearing earlier in the instrument referring to the Mortgagor's debt, Bank considered it possible that a mortgagor would not be indebted on the note for which the given mortgage was to serve as security.

¶ 23 Finally, we agree with appellees that Bank is estopped from arguing that the 1997 mortgages are invalid and unenforceable. Oklahoma jurisprudence recognizes the doctrine of judicial estoppel,[25] which provides that a party who has knowingly assumed a particular position dealing with matters of fact is estopped from assuming an inconsistent position to the detriment of the adverse party.[26] The doctrine applies to inconsistent positions assumed in the course of the same judicial proceeding or in subsequent proceedings where the parties and questions are identical.[27] The doctrine's purpose is "to protect the integrity of the judicial process"[28] by "prohibiting parties from deliberately changing positions according to the exigencies of the moment."[29] The doctrine applies only to prevent a party from advancing a position inconsistent with a court's determination of a matter of fact made by the court on the basis of that party's assertions.[30] It does not prevent a party from asserting a legal theory contrary to one advanced earlier in litigation.[31]

---

"In the interpretation of a promise or agreement or a term thereof, the following standards of preference are generally applicable:

\* \* \* \* \*

(d) separately negotiated or added terms are given greater weight than standardized terms or other terms not separately negotiated."

**23.** *See Fourth Nat'l Bank of Tulsa v. Eidson, supra* note 15 at ¶ 15, at 494.

**24.** *Mortgage Clearing Corp., supra* note 19 at ¶ 11, at 138; *Lewis v. Sac and Fox Tribe, supra* note 20 at ¶ 27, at 514.

**25.** *Capshaw v. Gulf Ins. Co.,* 2005 OK 5, ¶ 11, n. 28, 107 P.3d 595, 602, n. 28; *Messler v. Simmons Gun Specialties, Inc.,* 1984 OK 35, ¶ 18, 687 P.2d 121, 128.

**26.** *Capshaw, supra* note 25 at ¶ 11, n. 28, at 602, n. 28. *See also New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968 (2001) (noting that "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him," *quoting from Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895)).

**27.** *Capshaw, supra* note 25 at ¶ 11, n. 28, at 602, n. 28.

**28.** *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598 (6th Cir.1982).

**29.** *U.S. v. McCaskey,* 9 F.3d 368, 378 (5th Cir. 1993).

**30.** Judicial estoppel applies only when a party succeeds in showing that his opponent previously took an inconsistent position that was accepted by the court. *Griffith v. Wal–Mart Stores, Inc.,* 135 F.3d 376, 380 (6th Cir.1998); *Brinkman v. Gilligan,* 85 F.Supp.2d 761, 783 (S.D.Ohio 1999). It does not interfere with a party's statutory right to plead and rely on inconsistent facts, theories, claims, and defenses as authorized by the provisions of 12 O.S.2001 § 2008(E)(2). In *Teledyne Industries, Inc. v. N.L.R.B.,* 911 F.2d 1214, 1217–18, n. 3 (6th Cir.1990), the court explained that the doctrine of judicial estoppel does not conflict with Rule 8(e)(2) of the Federal Rules of Civil Procedure, which permits a party to plead inconsistent theories, because "judicial estoppel does not bar a party from contradicting itself, but from contradicting a court's determination that was based on that party's position."

**31.** *Panama Processes, S.A. v. Cities Service Co.,* 1990 OK 66, ¶ 22, 796 P.2d 276, 286.

¶ 24 This case provides a classic example of the circumstances calling for the application of judicial estoppel. Bank has accepted repayment of Tommie's loan from appellees, whose only interest with respect to that loan arises from the fact that mortgages securing the loan cover their property. They have no personal liability on Tommie's debt and if the mortgages are not valid and enforceable as surety instruments, Bank was not entitled to their money. Bank would have the court hold that the 1997 mortgages are valid and enforceable just long enough to obtain payment from appellees as sureties. Once that is accomplished, plaintiff would have us declare the mortgages invalid and unenforceable. The trial court made its surety determination based in part upon factual representations made by Bank. Appellees have acted on that determination to their detriment by paying off Tommie's debt. Bank's mid-stream reversal of position is precisely the type of machination that judicial estoppel serves to prevent.

## V

### APPELLEES' PROPERTY IS NOT SUBJECT TO THE DOCTRINE OF MARSHALING OF ASSETS

¶ 25 Bank argues that if this court should hold that the 1997 mortgages are valid and enforceable, it must nonetheless reverse the judgment for appellees because the trial court erred in refusing to order marshaling. Bank asserts that if appellees are subrogated to its rights in the 1997 mortgages, they become the lien holders as to all of the property subject to those mortgages, including Tommie's separate tract. According to Bank, this makes appellees senior lien holders as to Tommie's property under the 1997 mortgages, while Bank occupies the position of junior lien holder with respect to the same property under the 1999 mortgage. Under the doctrine of marshaling, Bank contends that it can require the senior lien holders to proceed first against the property which is not encumbered by its junior lien, meaning the land now owned by appellees themselves.

¶ 26 Marshaling of assets is an equitable doctrine which is designed to achieve fairness in the distribution of a debtor's assets among secured creditors.[32] The marshaling doctrine is codified in Oklahoma by the provisions of 24 O.S.2001 § 4[33] and 42 O.S.2001 § 17.[34] In order for marshaling to apply, three conditions must be met: there must be (a) two or more secured creditors of a common debtor, (b) two or more funds belonging to the common debtor, and (c) a senior creditor who has the right to resort to more than one fund and a junior creditor who has the right to resort to only one.[35] The party seeking to invoke marshaling must also demonstrate that application of the doctrine will not impose an undue hardship on the senior lien holder.[36]

---

**32.** *In re Borges*, 184 B.R. 874, 880 (D.Conn. 1995).

**33.** The provisions of 24 O.S.2001 § 4 state:

"Where a creditor is entitled to restore (sic) to each of several funds for the satisfaction of his claim, and another person has an interest in or is entitled as a creditor to resort to some but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons."

**34.** The provisions of 42 O.S.2001 § 17 state:

"Where one has a lien upon several things, and other persons have subordinate liens upon or interests in, some but not all of the same things, the person having the prior lien, if he can do so without the risk of loss to himself, or injustice to other persons, must resort to the property in the following order, on the demand of any party interested:
1. To the things upon which he has an exclusive lien;
2. To the things which are subject to the fewest subordinate liens;
3. In like manner inversely to the number of subordinate liens upon the same thing; and,
4. When several things are within one of the foregoing classes, and subject to the same number of liens, resort must be had,—
(a) To the things which have not been transferred since the prior lien was created;
(b) To the things which have been so transferred without a valuable consideration; and,
(c) To the things which have been so transferred for a valuable consideration."

**35.** *Muskogee Indus. Fin. Corp. v. Perkins*, 1961 OK 110, ¶ 25, 361 P.2d 1065, 1070.

¶ 27 Appellees argue that the doctrine of marshaling does not apply because they are neither creditors nor lien holders. We disagree. A surety is a creditor of the principal from the inception of the contingent liability created by the surety relationship.[37] Moreover, through equitable subrogation, Maxine and Voyle now occupy the position of senior lien holders as to Tommie's property.[38] We nevertheless agree with the trial court that appellees' property is not subject to marshaling.

¶ 28 Marshaling rests on the presence of at least two funds belonging to a common debtor, both of which may be reached by the creditor against whom marshaling is sought. Bank argues that Maxine and Voyle have two "funds" from which they can obtain reimbursement: one fund consisting of the property mortgaged in 1997 that they now individually own and a second fund consisting of Tommie's individually-owned tract, which is impressed by both the 1997 and 1999 mortgages. Bank argues that Maxine and Voyle should be ordered to seek reimbursement first from the fund that is exclusively theirs—their own property—and have recourse to Tommie's property only in the event their own property fails to fully reimburse them.

¶ 29 The anomaly presented by plaintiff's marshaling demand—**compelling sureties to indemnify themselves out of their own property**—is averted in this case because **appellees' property does not constitute in law a second fund from which appellees may obtain reimbursement.** The doctrine of merger of estates holds that when a greater and a lesser estate coincide and meet in the same person, the lesser estate is absorbed or merged into the greater estate, unless merger would be disadvantageous to the party acquiring both interests or unless the rights of innocent third parties, strangers to the transaction, would be prejudiced by merger.[39] Neither exception applies here.[40]

**36.** *In re Martin,* 1994 OK 48, ¶ 13, 875 P.2d 417, 421.

**37.** Our statutes provide several definitions of the term creditor from which it can reasonably be concluded that a surety stands in the relation of creditor to the principal obligor. The provisions of 24 O.S.2001 § 2 state: "A creditor, within the meaning of this chapter, is one in whose favor an obligation exists, by reason of which he is, *or may become, entitled to the payment of money.*" (emphasis added) The provisions of 25 O.S.2001 § 8 state: "Except as defined and used in Sections 2892 and 2893 [24 O.S.2001 §§ 1 and 2], every one who owes to another the performance of an obligation is called a debtor, and one to whom he owes it is called a creditor." Under the Uniform Fraudulent Transfer Act, a creditor is anyone who has a claim, 24 O.S.2001 § 113(4), and a claim is defined at 24 O.S.2001 § 113(3) as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, *contingent,* matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." (emphasis added) *See Wallace v. Brooks,* 1944 OK 76, ¶¶ 25–27, 147 P.2d 784, 788; *Smith v. Young.* 173 Ala. 190, 55 So. 425, 426 (1911) (holding surety is a creditor with respect to fraudulent conveyances); *Mellette Farmers' Elevator Co. v. H. Poehler Co.,* 18 F.2d 430, 431 (D.Minn.1927) (recognizing that the relation of debtor and creditor exists between the principal and the surety from the time a contract of suretyship is made); *Trachten v. Boyarsky,* 122 Conn. 465, 190 A. 869, 871 (1937). Under the federal Bankruptcy Code, a guarantor or surety is considered a creditor with a contingent claim against the debtor. *In re Alliance Aerospace, LLC,* 280 B.R. 752, 753 (Bankr.M.D.Ga.2002).

**38.** The doctrine of equitable subrogation is a tool to compel the ultimate discharge of an obligation by the person who in good conscience ought to pay it. *In re Estate of MacFarline,* 2000 OK 87, ¶ 24, 14 P.3d 551, 561; *Travelers Ins. Cos. v. Dickey,* 1990 OK 109, ¶ 6, n. 1, 799 P.2d 625, 627, n. 1; *Republic Underwriters Ins. Co. v. Fire Ins. Exch.,* 1982 OK 67, ¶ 11, 655 P.2d 544, 547. *See also* the provisions of 15 O.S.2001 § 382, which state:

"A surety, upon satisfying the obligations of the principal, is entitled to enforce every remedy which the creditor then has against the principal, to the extent of reimbursing what he has expended; and also to require all his cosureties to contribute thereto, without regard to the order of time in which they became such."

**39.** *Dowling v. Springer,* 1940 OK 117, ¶ 3, 100 P.2d 278, 279; *Citizen's Sec. Bank of Bixby v. Courtney,* 1977 OK CIV APP 41, ¶ 8, 572 P.2d 1302, 1304.

**40.** The Bank is not a stranger to the transaction, but an active participant. Moreover, Bank is not prejudiced by the application of the doctrine of merger because it has received full payment of the 1997 debt from appellees. That Bank would be in a position to obtain more if the merger doctrine were not applied is not to be viewed as prejudice but should rather be considered as equity's remedial bar.

Thus, when Maxine and Voyle became subrogated to the Bank's mortgages on property held by them in fee, their fee interest and their mortgage interest merged and the mortgage interest was extinguished.[41] Maxine and Voyle's only recourse is to Tommie's tract for any recoupment to which they are entitled. With only one "fund" available to Maxine and Voyle, there is nothing to marshal.

¶ 30 Even if there were no merger of the fee belonging to Maxine and Voyle and the mortgage liens on their property, there would still not be two funds *belonging to the debtor* against which Maxine and Voyle could assert their claim. The only property that could constitute a fund other than Tommie's property is the property owned by Maxine and Voyle. A fund or property held by a surety of the common debtor is not a fund belonging to the debtor which may be reached by the debtor's creditor.[42] For this reason, too, plaintiff's marshaling demand correctly was met by the trial court's disapproval.

## VI

## UPON SATISFYING TOMMIE'S DEBT TO BANK, APPELLEES BECAME ENTITLED TO CONTRIBUTION FROM TOMMIE AS THEIR CO-SURETY AND ARE SUBROGATED TO THE BANK'S RIGHTS IN ANY COLLATERAL BELONGING TO TOMMIE TO THE EXTENT OF HIS PRO-RATA SHARE OF THE SECURED OBLIGATION

¶ 31 While we agree with the trial court that Maxine and Voyle may foreclose on all or part of the property mortgaged in 1997, we do not agree that they are entitled to be completely reimbursed out of Tommie's individually owned property. After Horace died, his surety-by-hypothecation (to secure another's debt) status in the 1,760 acres was transferred to his children in proportion to the testamentary devise each received. Tommie is hence not only the principal debtor in the 1997 transaction, but is now also the owner of property pledged in a surety capacity to secure his debt. Tommie thus wears two hats: that of the principal debtor under the 1997 note and that of co-surety-by-hypothecation (to secure another's debt) with Maxine and Voyle.

¶ 32 Oklahoma statutory law gives sureties such as Maxine and Voyle, who have paid the debt of their principal, the right to obtain full reimbursement of the discharged obligation from their principal[43] as well as recourse to property, if any, which the principal obligor has directly pledged to secure the debt.[44] Additionally, a surety who

---

**41.** *Paris Bank of Texas v. D.W. Custer*, 1984 OK 5, ¶¶ 27–29, 681 P.2d 71, 77 (holding in a similar situation that where Tracts 1, 2, and 3 were subject to a mortgage held by A, and B acquired title to Tracts 2 and 3 and then took from A an assignment of the mortgage on Tracts 1, 2 and 3, the lien on Tracts 2 and 3 merged into B's previously acquired title, precluding application of marshaling as to those two tracts).

**42.** *UPS Capital Bus. Credit v. C.R. Cable Constr. Inc.*, 181 S.W.3d 44, 48 (Ky.App.2005); *First Interstate Bank of Calif. v. H.C.T., Inc.*, 108 Nev. 242, 828 P.2d 405, 409 (1992); *Enloe v. Franklin Bank and Trust Co.*, 445 N.E.2d 1005, 1008 (Ind. App.1983); *Mason v. Hull*, 55 Ohio St. 256, 45 N.E. 632, 633 (1896).

**43.** *See* the provisions of 15 O.S.2001 § 381, which state:
"If a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what he has disbursed, including necessary costs and expenses; ..."
*Keyes v. Dyer*, 1952 OK 166, ¶ 6, 243 P.2d 710, 712 (stating that "the remedy at law of the surety who has paid a note or satisfied a judgment for his principal is an action on the obligation, implied by law, of the principal to reimburse his surety."). The effect of the federal bankruptcy laws on a surety's state-law right to be reimbursed for a post-petition payment of a discharged debt is not here at issue and we do not address it.

**44.** The provisions of 15 O.S.2001 § 383 state:
"A surety is entitled to the benefit of every security for the performance of the principal obligation, held by the creditor or by a co-surety, at the time of entering into the contract of suretyship, or acquired by him afterwards, whether the surety was aware of the security or not."

has discharged more than his or her proportional share of the principal's obligation is entitled to contribution from any co-surety, including recourse against property pledged by the co-surety to the extent of that person's ratable portion of the surety obligation.[45] The latter is the position of Maxine and Voyle in relation to the surety-charged property owned by Tommie. *The trial court authorized Maxine and Voyle to obtain full reimbursement of their tendered payment of Tommie's debt from foreclosure of Tommie's tract, not just proportional contribution. Bank is entitled to relief from the trial court's judgment to the extent it authorizes the co-sureties to obtain in reimbursement from Tommie's property more than their aliquot share of the surety obligation. The relief we grant today inures to Bank's benefit: any balance remaining from the sale of Tommie's property after it has been charged with its co-surety contributive share must stand available to satisfy Bank's 1999 mortgage.*

¶ 33 The trial court's judgment that Maxine and Voyle are entitled to be fully reimbursed out of Tommie's tract leaves the record devoid of the kind of analysis necessary to determine how the 1997 debt should be apportioned amongst the three tracts now owned by Tommie and appellees. Without limiting the parties to any particular formula and only by way of illustration, we note that the obligation might be divided on the basis of the proportion each sibling's acreage bears to the entire 1,760 acres originally pledged by Horace or perhaps in proportion to the monetary value each one's acreage bears to the monetary value of the entire 1,760 acres. The parties must be afforded an opportunity to present argument and proof on the proper method to determine the pro-rata share of the debt chargeable to each of the tracts in question. For this purpose we remand the cause to the trial court.

## VII

### SUMMARY

¶ 34 The 1997 mortgages are valid and enforceable. Appellees who, as sureties, have paid Tommie's debt now stand subrogated to the rights of Bank in the mortgaged property, but only to the extent they are entitled to contribution from Tommie in his capacity as co-surety. The trial court is directed upon remand to determine the pro-rata share of the 1997 debt chargeable to Tommie's separate tract, which is impressed with his co-surety obligation.

¶ 35 **SUMMARY JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS TO BE CONSISTENT WITH THIS OPINION**

¶ 36 ALL JUSTICES CONCUR.

---

*Wills v. Fuller*, 1915 OK ——, 150 P. 693, 694; *Saunders v. Saunders*, 49 Idaho 733, 291 P. 1069, 1070 (1930) (noting that when security has been given to a creditor in connection with a transaction a surety may proceed against the property).

**45.** *Strickler v. Gitchel*, 1904 OK 122, ¶ 3, 78 P. 94, 95; *McAllister v. Border*, 1924 OK 28, ¶ 8, 222 P. 537, 538; *Martin v. Coogan*, 1936 OK 277, ¶ 14, 55 P.2d 1037, 1040; *Frank v. Nat'l Printing and Office Supply Co.*, 1959 OK 108, ¶ 19, 343 P.2d 1085, 1089–90. The provisions of 15 O.S. 2001 § 382 state:

A surety, upon satisfying the obligations of the principal, is entitled to enforce every remedy which the creditor then has against the principal, to the extent of reimbursing what he has expended; and also to require all his cosureties to contribute thereto, without regard to the order of time in which they became such. *See also* the provisions of 15 O.S.2001 § 383, *supra* note 44.